UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-20002 |
| | ) | |
| GERARDO LUGO, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S CONSOLIDATED RESPONSE TO
DEFENDANT LUGO'S MOTION TO DISMISS INDICTMENT
AND MOTION FOR BILL OF PARTICULARS**

The United States of America, by its attorneys, Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Timothy A. Bass, Assistant United States Attorney, respectfully submits its consolidated response to Defendant Lugo's motion to dismiss indictment and motion for bill of particulars. The government states as follows:

**FACTS/PROCEDURAL HISTORY**

1.      This case arises out of a joint DEA/Kankakee Metropolitan Area Enforcement Group (KAMEG) investigation in Kankakee, Illinois that began in 2004.

**Initial Charges**

2.      On August 23, 2006, Defendant Lugo was charged in a criminal complaint (06-07222). The affidavit in support of the complaint provided a summary of two video and audio recorded drug transactions involving Defendant Lugo that occurred on June

9, 2005, and January 25, 2006, both of which are now charged in the superseding indictment against Defendants Lugo and Jose Rios as Counts 3 and 4. In describing the January 25, 2006, transaction, the affidavit states that "[an] informant and LUGO discuss[ed] the fact that [the informant] owes LUGO's source $32,350 for previous drug purchases." (Aff. at ¶14)

3.      On August 23, 2006, Defendant Rios was charged in a criminal complaint with conspiracy to distribute cocaine (06-07223). The affidavit in support of the complaint provided a partial detailed summary of the evidence of the conspiracy.

4.      Other defendants charged out of the same investigation in criminal complaints on August 22 and 23, 2006, include Christopher Morrissette (06-07219), Robert Odeneal (06-07216), Jason Pline (06-07217), Mario Macias (06-07220), and Heriberto Diaz (06-07218). The affidavits concerning these defendants described the drug transactions for which they were individually charged. In addition, an additional defendant, Jason Ward, was charged previously in a criminal complaint and indictment and pleaded guilty in 2004. (04-07227, 04-20041)

5.      On September 20, 2006, Defendant Rios was charged in an indictment with conspiracy to distribute 5 or more kilograms of cocaine. (06-20062) On that same date, Defendant Lugo was charged in an indictment with distribution of cocaine. (06-20057) In addition, related defendants Morrissette (06-20060), Macias (06-20059), Odeneal (06-20061), Pline (06-20063), and Diaz (06-20058) were also charged in separate indictments.

2

6.      In October 2006, the government made discovery available to each of the defendants. As part of that disclosure, the government provided Defendant Lugo with individual copies of all audio and video recordings of Defendant Lugo. In addition, the government provided all defendants, including Defendant Lugo, with access to any recordings of other related defendants. Finally, the government provided access to documentary evidence and early access to all available material under 18 U.S.C. § 3500 (Jencks Act), including all available reports of investigation. The only condition placed on the early disclosure of the § 3500 or Jencks material was that, to protect the integrity of the ongoing investigation and the confidentiality of witnesses, the material was made available and required to be reviewed in the United States Attorney's Office in Urbana. The government made the material available during all business hours, Monday through Friday. The government also advised the defendants that it would make available a law enforcement agent, legal assistant, or paralegal if necessary to facilitate their review of the discovery materials.

## Superseding Indictment

7.      On January 4, 2007, Defendants Lugo and Rios were charged together in a superseding indictment. Count 1 of the superseding indictment charges that "from at least about 2003 or before and continuing until about August 2006," the defendants conspired to distribute and to possess with the intent to distribute 5 or more kilograms of cocaine. Count 1 further charges that "[a]s part of the conspiracy, the defendants regularly distributed cocaine and caused others to distribute cocaine, often on a front or

3

consignment basis, in the Kankakee, Illinois area."

8.    The superseding indictment also charges one substantive count against Defendant Rios and two substantive counts against Defendant Lugo. Count 2 charges Defendant Rios with possession of a firearm in furtherance of a drug trafficking crime on or about February 18, 2004. Counts 3 and 4 charge Defendant Lugo with distribution of cocaine on or about June 9, 2005, and January 25, 2006.

9.    In January and February 2007, related defendants Morrissette, Odeneal, Macias and Pline entered guilty pleas to their respective indictments. As part of their guilty pleas, Morrissette and Odeneal agreed to be held accountable for 5 or more kilograms of cocaine. (See Plea Agreements of Morrissette 06-20060, and Odeneal 06-20061)

## SUMMARY OF GOVERNMENT'S EVIDENCE

10.    At trial, the government will present evidence to establish that, as the indictment alleges, from about 2003, and continuing until August 2006, Defendants Rios and Lugo knowingly and intentionally conspired with each other and others to distribute and possess with the intent to distribute a controlled substance, namely, 5 kilograms or more of a mixture or substance containing cocaine. The "others" referenced in the superseding indictment include Jason Ward, Christopher Morrissette, Robert Odeneal, Mario Macias, and James Pline. In addition, the evidence will further establish that as part of the conspiracy, Defendants Rios and Lugo regularly distributed cocaine and caused others to distribute cocaine, often on a front or consignment basis,

4

in the Kankakee, Illinois area. Finally, the evidence will further establish that, as part of the conspiracy, Defendants Lugo and Rios committed the substantive offenses charged against Rios in Count 2 and Lugo in Counts 3 and 4.

**Witness Testimony**

11.      To establish the charged conspiracy, the government intends to call Morrissette, Odeneal, Ward, Macias, and Pline as witnesses at trial. The government expects that their testimony will establish that the charged conspiracy began in as early as 2003 and continued to August 2006. In addition, the government expects that these witnesses will testify that Defendants Rios and Lugo distributed cocaine together, sometimes on a front or consignment basis, and that Defendant Lugo distributed cocaine and collected money for Defendant Rios. Finally, the government expects that Morrissette and Odeneal will testify that the 5 or more kilograms of cocaine they have already agreed to be responsible for at sentencing was part of the conspiracy with Defendants Rios and Lugo.

**Corroborative Evidence**

12.      In addition, the government's evidence at trial will include the following:

13.      On February 12, 2004, KAMEG agents utilized a confidential informant (CI) to conduct a controlled purchase of approximately 4.0 grams of cocaine from Jason Ward at his residence in Bourbonnais, Illinois. During the execution of a subsequent search warrant at Ward's residence, Ward fired a shot at agents from an upstairs bedroom. He was thereafter arrested. Recovered from the floor of the bedroom was a

5

High Point, 9 mm semi-automatic pistol.

14.    During the search of Ward's residence, agents seized several items consistent with drug trafficking. In addition to the High Point 9 mm pistol, evidence seized included a Cobray PM-11, 9 mm assault pistol, a Bauer Firearms Corp. .25 cal. Pistol, approximately 85 grams of marijuana, approximately 1.6 grams of cocaine, plastic sandwich bags, a digital scale, and $7,190 in cash.

15.    Ward was later indicted in this district with drug and firearm offenses. He pleaded guilty and agreed to cooperate with the government. As part of his cooperation, Ward discussed the nature of his drug trafficking and further advised that that the assault pistol found in his residence was provided by Defendant Rios.

16.    On February 17, 2004, agents confronted Defendant Rios about the firearm found at Ward's residence. Defendant Rios admitted to providing the firearm to Ward but denied knowing that he was a felon. He further consented to a search of his residence in Kankakee. This statement was recorded. During a search of Defendant Rios's residence, agents seized a total of thirteen firearms, including nine semi-automatic handguns and three rifles.

17.    On January 20, 2005, a CI and a DEA undercover agent purchased approximately 130.2 grams of cocaine from Hereberto Diaz in Kankakee for $3,100. Prior to the transaction, agents observed a blue Chevrolet Tahoe at Diaz's residence. Shortly thereafter, the Tahoe left the residence and was driven by Defendant Rios. Following the transaction, agents observed Defendant Rios meet with Diaz at a pet

6

store in Kankakee. As they were leaving the store, agents observed Diaz hand an

unknown item to Defendant Rios.

18.    On June 9, 2005, agents met with a CI to conduct a controlled purchase of

cocaine from Defendant Lugo. The CI and Defendant Lugo agreed to meet at a location

in Kankakee to conduct a purchase of 4 1/2 ounces of cocaine for $2,500. The CI was

searched with negative results and provided with $2,500 and a recording device. The CI

later met with Defendant Lugo in Kankakee. While at the meet location, agents

observed the CI get into Defendant Lugo's car (a black Pontiac Sun-fire) and then get

out of the car a few minutes later. During the meeting, the CI purchased approximately

156 grams of cocaine from Defendant Lugo in exchange for the $2,500. This transaction

was audio and video recorded. Later, in August 2006, agents seized the Pontiac Sun-

Fire and found that it contained a modified hidden storage area, which was used to

transport illegal drugs, in the area of the passenger air bag compartment.

19.    On June 13, 2005, a CI was contacted by Rios and was directed to come to

Rios's trailer at 1405 North Arthur Burch Dr., Lot V-12, in Bourbonnais. While at the

trailer, the CI observed a list of people who owed money to Defendant Lugo for

cocaine. The CS also observed several scales in the kitchen cabinets.

20.    On August 4, 2005, agents conducted surveillance at Defendant Rios's

trailer and observed a tan Land Rover, driven by a white male, and a black Hyundai

with Iowa registration, driven by James Pline, arrive at the trailer and then depart

approximately ten minutes later. Shortly thereafter, a traffic stop was conducted on

Pline's car. During the stop, a drug dog alerted on the car. During a search of the car,
agents seized 500 grams (1/2 kilogram of cocaine). Subsequent analysis on the
packaging for the cocaine revealed Defendant Rios's fingerprint.

21.    On September 26, 2005, a CI purchased approximately nine ounces of
cocaine from Valentin Atilano in exchange for $5,400. Prior to the transaction, agents
observed Atilano meet with Defendant Rios at Rios's trailer. Shortly therafter,
Defendant Rios left the trailer, went to Wal-Mart, and then returned back to the trailer.
Atilano then left the trailer and met with the CI to conduct the cocaine transaction. The
cocaine was contained within a Wal-Mart bag.

22.    Phone records obtained for phones known to be utilized by Defendant
Rios and Atilano reflect that between June and December 2005, there were 847 contacts
between Rios and Atilano. Total phone contacts between them exceed 1,000.

23.    On January 25, 2006, a CI conducted a recorded telephone conversation
with Defendant Rios. During the conversation, the CI and Defendant Rios discussed the
CI's $32,350 drug debt that was owed to Defendant Rios. The CI advised Rios that
Lugo instructed the CI to call Rios. Defendant Rios instructed the CI to write down the
amount of debt and provide it to Defendant Lugo.

24.    In addition, during the call, the CI also asked Defendant Rios about
obtaining additional cocaine. The CI advised Defendant Rios that he had $3,500 to pay
toward the debt but that he wanted to obtain more cocaine as a means of making
additional money for payment. Defendant Rios advised that he would contact

8

Defendant Lugo to arrange the delivery of cocaine.

25.    Later that same day, the CI contacted Defendant Lugo by phone and conducted an additional recorded conversation. During the call, the CI advised Defendant Lugo of his earlier conversation with Defendant Rios concerning the CI's debt. They also discussed arrangements to meet at the CI's residence to conduct a purchase of an additional 4 1/2 ounces of cocaine.

26.    Following the call with Defendant Lugo, agents set up the CI's residence with audio and video recording devices. They also searched the CI and provided him with $3,500. In addition, agents instructed the CI to write down the amount of the debt owed to Defendant Rios.

27.    Approximately one hour later, agents observed Defendant Lugo arrive at and enter the residence. While inside the residence, Defendant Lugo provided the CI with 133.4 grams of cocaine in exchange for $3,500. This entire transaction was audio and video recorded. The video recording reflects that Defendant Lugo entered the residence, placed the cocaine on the kitchen table, and then picked up from the table the money and the paper on which was the written amount of the debt owed to Defendant Rios.

28.    On March 13, 2006, Chicago police officers executed a state search warrant at a known apartment of Defendant Rios in Cicero, Illinois. Defendant Rios was present at the time of the search. During the search, officers seized 192 grams of cocaine, a kilogram press box, and $21,480 in cash.

29.    On August 3, 2006, Defendant Rios was the subject of a traffic stop by the Illinois State Police that occurred in Berwyn (Cook County), Illinois. During the stop, Defendant Rios consented to a search of his residence in Berwyn. During a search of the residence, officers seized $27,000 in cash.

30.    In December 2006, agents observed a second black Pontiac Sun-Fire at a storage unit for Defendant Rios in Bourbannais. The car was registered to Defendant Lugo with a known address for Defendant Rios. Agents photographed a modified hidden storage area in the car, which was located in the passenger air bag compartment, the same location of the hidden storage area previously found in the other black Pontiac Sun-Fire used by Defendant Lugo.

31.    A review of phone records obtained to date for Defendants Rios and Lugo reflects more than **500** phone calls between them. In addition, phone records reflect more than **180** calls between Defendant Rios and Morrissette and more than **50** calls between Morrissette and Defendant Lugo.

### Expert Testimony

32.    The government also intends to introduce summary/expert testimony from DEA Special Agent Tony Grootens or DEA Special Agent Glenn Haas, both of whom work out of the Springfield, Illinois DEA office. One of these agents will testify to matters concerning common characteristics of persons engaged in drug trafficking. Specifically, the agent will testify that persons engaged in drug trafficking often possess large amounts of cash, engage in cash transactions, distribute cocaine on a "front" or

10

consignment basis, and utilize vehicles to transport cocaine that have been modified to contain hidden compartments. In addition, one of these agents will also testify to common distribution amounts and prices for cocaine. Finally, one of the agents will testify that one kilogram of cocaine is typically sold for $20,000 or more in Kankakee, Illinois. The agent will testify to these matters based on his extensive experience in drug trafficking investigations.

## ARGUMENT

### Defendant Lugo's Motion to Dismiss Indictment

33.     Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the crime charged[.]"

34.     The standard for the sufficiency of an indictment is settled law in this Circuit. "For an indictment to be sufficient, it must accomplish three functions: it must state each of the elements of the offense charged; it must provide adequate notice of the nature of the charges so that the accused may prepare a defense; and it must allow the defendant to raise the judgment as a bar to future prosecutions for the same offense." United States v. Fassnacht, 332 F.3d 440, 444-45 (7th Cir. 2003). "[A]n indictment that uses the language of the statute when setting forth the offense is usually sufficient as long as the statutory language unabiguously sets out all the elements necessary to constitute the offense." United States v. Locklear, 97 F.3d 196, 199 (7th Cir. 1996) (quoting United States v. Allender, 62 F.3d 909, 914 (7th Cir. 1995)).

35.    The Seventh Circuit has "cautioned that the sufficiency of an indictment is to be reviewed practically, with a view to the indictment in its entirety, rather than in any hypertechnical manner." Fassnacht, 332 F.3d at 45. Although "an indictment must do more than recite the statutory elements, this does not mean that the government is required to provide every factual nugget necessary for conviction." Id. "Rather, the indictment need only provide some means of pinning down the specific conduct at issue." Id. Where a conspiracy is the charged offense, "a conspiracy indictment need not be as detailed and specific as an indictment alleging a substantive offense." United States v. Roman, 728 F.2d 846, 852 (7th Cir. 1984).

36.    "The essential elements of an offense under [21 U.S.C.§] 846 are the existence of an agreement between two or more individuals, with the intent to commit an offense in violation of the Controlled Substances Act." United States v. Sweeney, 688 F.2d 1131, 1140 (7th Cir. 1982). Thus, the Seventh Circuit has repeatedly held that an indictment under 21 U.S.C. § 846 is sufficient "if it alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative, and the statute allegedly violated, even if it fails to allege any specific overt act in furtherance of the conspiracy." Sweeney, 688 F.2d at 1140; see also United States v. Spears, 965 F.2d 262, 279 (7th Cir. 1992) ("If the indictment is brought under 21 U.S.C. § 846, as it is here, it is sufficient if it alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative, and the statute allegedly violated[;] [i]t need not allege *any* overt acts"); United States v. Dempsey, 806 F.2d 766, 769 (7th Cir. 1986); Roman, 728 F.2d at 853.

37.     In this case, Defendant Lugo seeks dismissal of Count 1 of the superseding indictment. The indictment, however, alleges a conspiracy to distribute and possess with the intent to distribute cocaine, it alleges a time frame during which the conspiracy was operative–from at least about 2003 or before and continuing until about August 2006--and it alleges the statutes violated--21 U.S.C. § 846, 841(a)(1), 841(b)(1)(A). Moreover, the indictment alleges that the defendants engaged in overt acts by regularly distributing cocaine and causing others to distribute cocaine, often on a front or consignment basis, in the Kankakee, Illinois area. Finally, the indictment alleges a specific place–-Kankakee, Illinois and the Central District of Illinois–-and further alleges in Count 1 that Defendant Rios possessed a firearm in furtherance of a drug conspiracy during the time period of the charged conspiracy and in Counts 3 and 4 that Defendant Lugo distributed cocaine during the time period of the charged conspiracy. Accordingly, the indictment is more than legally sufficient under settled law in this Circuit. See Spears, 965 F.2d at 279; Dempsey, 806 F.2d at 769; Roman, 728 F.2d at 853; Sweeney, 688 F.2d at 1140.

38.     In seeking the drastic remedy of dismissal of Count 1 of the superseding indictment, Defendant Lugo largely avoids a claim that the indictment does not meet minimal requirements and instead argues that the indictment fails to sufficiently allege the evidentiary detail on which the government intends to prove its case. The defendant argues that the indictment "is too vague and is not specific enough[,]" "fail[s] to identify any overt acts[,]" "fails to allege sufficient facts[,]" and "is completely silent regarding

13

any dates and facts for which the government alleges the conspiracy against Mr. Lugo."

(See Defendant Lugo's Motion, at pp.4-5)

39.     The defendant's argument, however, is simply wrong, since the indictment does allege overt acts and various substantive offenses by Defendants Rios and Lugo within the charged conspiracy. Moreover, the defendant's argument is also largely irrelevant. "After all, the defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." Fassnacht, 332 F.3d at 45; see also United States v. Payton, 328 F.3d 910, 911 (7th Cir. 2003) ("[b]ecause it is the grand jury's statement of the existence of the conspiracy agreement rather than the identity of the parties to the agreement that puts the defendant on notice of the charge he must be prepared to meet, an indictment need not name coconspirators"; "both the rule and the reason for it are clear: the government need not prove with whom a defendant conspired, only that he joined the agreement") (emphasis in original).

40.     The defendant's primary complaint appears to be that the time period of the indictment is"too vague" and is "open-ended and imprecise." (Def. Motion at p.4) In support of this claim, the defendant relies, not on any Seventh Circuit authority, but rather on the Ninth Circuit's decision in United States v. Cecil, 608 F.2d 1294 (9th Cir. 1979) (per curiam), where that court reversed a conviction due to the insufficiency of the indictment. In Cecil, "the indictment's basic weakness was that it failed to place the conspiracy in a specific time frame; instead, it merely alleged 'that beginning on or

14

before July, 1975, and continuing thereafter until on or after October, 1975.'" See

Roman, 728 F.2d at 851 (discussing Cecil). The defendant argues that, like Cecil, the

current indictment is insufficient.

41.     Contrary to the defendant's claim, the present indictment alleges a specific

time frame of "[f]rom at least about 2003 or before and continuing until about August

2006." Thus, it is not "open-ended in both directions." Cecil, 608 F.2d at 1297. Moreover,

"there is no indication in the record that this period of time was arbitrarily chosen by

the prosecution in order to ensure that the conspiracy fell somewhere within that time

period." Roman, 728 F.2d at 851 (distinguishing Cecil). Indeed, the time period of the

current indictment specifically corresponds with (1) the expected testimony of

Morrissette, Odeneal, Ward, Macias and Pline; (2) the corroborative evidence; and

(3) the very time period during which Defendants Rios and Lugo are alleged to have

committed the substantive offenses charged in Counts 2, 3 and 4 in furtherance of the

charged conspiracy. Accordingly, the defendant's reliance on Cecil and his motion to

dismiss Count 1 are meritless.[1]

42.     The defendant further makes a conclusory and unsupported claim that

Counts 3 and 4 of the superseding indictment "are not part of the alleged conspiracy

discussed in Count 1." (Def. Motion at p.4) Not only does this claim provide no support

for the defendant's effort to dismiss Count 1 of the indictment, it is simply inaccurate.

---

[1]See also United States v. Edmonson, 962 F.2d 1535, 1541 (10th Cir. 1992)
(distinguishing Cecil and finding that "the indictment could properly be construed to
mean 'on or about' and the word 'before' could be deemed superfluous").

15

Counts 2, 3 and 4 are part of the charged conspiracy, they occurred within the time period of the charged conspiracy, and they are at the heart of the proof of the conspiracy charged. In fact, as described above in the factual section of this response and as referenced in the original complaint against Defendant Lugo, the evidence as to Count 4 will establish a drug transaction arranged with Defendants Rios and Lugo, during which both defendants discuss during separate recorded conversations an outstanding drug debt owed to Defendant Rios. Accordingly, the defendant's claim is meritless.

### Defendant Lugo's Motion for Bill of Particulars

43.     Rule 7(f) of the Federal Rules of Procedure provides that the district court "may direct the government to file a bill of particulars." The decision whether to grant a defendant's motion for a bill of particulars is within the sound discretion of the district court, and that decision will not be reversed on appeal without a showing of an abuse of that discretion. United States v. Canino, 949 F.2d 928, 949 (7th Cir. 1991).

44.     The law in the Seventh Circuit governing the standard for granting a motion for bill of particulars is equally well established and "is similar to the test for determining the general sufficiency of the indictment[.]" Fassnacht, 332 F.3d at 446. "The test for whether a bill of particulars is necessary is whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." United States v. Kendall, 665 F.2d 126, 134 (7th Cir. 1981) (emphasis in original) (quotation omitted). A bill of particulars is not to

16

be used as a discovery tool. Indeed, it "may not be used to obtain a detailed disclosure of the government's evidence prior to trial." United States v. Perez, 489 F.2d 51, 71 (7th Cir. 1974). Just as a defendant is not entitled to know the details of the evidence the government will seek to introduce, he is also not "entitled to know for what purpose the government will seek to have it admitted." Kendall, 665 F.2d at 134. "Accordingly, a bill of particulars is necessary only where the indictment does not sufficiently apprise the defendant of the charges to enable h[im] to prepare for trial." United States v. Esteves, 886 F. Supp. 645, 646 (N.D. Ill. 1995) (citing Canino, 949 F.2d at 949).

45.    "In deciding whether a bill of particulars is appropriate, the court may consider the complexity of the charges, the clarity of the indictment, and the degree of discovery available to the defense absent a bill." Id. A defendant is not entitled to statements of witnesses, see 18 U.S.C. § 3500 (Jencks Act), the identity of unindicted co-conspirators, see, e.g., Rogers v. United States, 340 U.S. 367, 375 (1951) ("at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown"); Payton, 328 F.3d at 911; United States v. Kramer, 711 F.2d 789, 796 (7th Cir. 1983); Esteves, 886 F.Supp. at 646, or a list of the government's witnesses, United States v. Johnson, 504 F.2d 622, 628 (7th Cir. 1974) ("A bill of particulars cannot be used 'to obtain a list of the government's witnesses . . . or evidentiary detail"); United States v. Cansler, 419 F.2d 952, 954 (7th Cir. 1969) ("purpose of the bill is to adequately inform a defendant as to the indictment against him and is

not to supply the defendant with a list of the government's witnesses"), or the evidentiary details of the government's case or its purpose for the admission of evidence. Kendall, 665 F.2d at 135.

46.    In short, as the Seventh Circuit has repeatedly stated, "the defendant's constitutional right is to know the offense with which he is charged, not the details of how it will be proved." Id.; United States v. Richardson, 130 F.3d 765, 776 (7th Cir. 1997) (defendant "is only entitled to know the offense with which he is charged, not all the details of how it will be proved").

47.    In this case, the indictment alleges a conspiracy to distribute and possess with the intent to distribute cocaine, it alleges a time frame during which the conspiracy was operative--from about 2003 or before and continuing to August 2006--and it alleges the statute violated--21 U.S.C. § 846, 841(a)(1), 841(b)(1)(A). Moreover, the indictment alleges that Defendants Rios and Lugo engaged in overt acts by regularly distributing cocaine and causing others to distribute cocaine, often on a front or consignment basis, in the Kankakee, Illinois area. Finally, the indictment alleges a specific place--Kankakee, Illinois and the Central District of Illinois--and further alleges substantive offenses committed by Defendants Rios and Lugo within the time period of the charged conspiracy.

48.    Thus, the indictment more than adequately informs the defendants of the offenses charged, the time frame in which the offenses took place, and citation to the relevant statutes. Moreover, "[t]he entire record in this proceeding is admissible in any

subsequent criminal proceeding to prove that [the] defendant has already been prosecuted for the same offense." Kramer, 711 F.2d at 796.

49.    The defendant does not seriously complain that the indictment does not meet these criteria, but rather he requests specific evidentiary details of the government's case. In fact, he asks that this Court order the government to answer a list of interrogatories. That type of information, however, is simply not appropriate for a bill of particulars. See Kendall, 665 F.2d at 135; Richardson, 130 F.3d at 776; see also United States v. Grasso, 173 F.Supp.2d 353, 366 (E.D. Pa. 2001) ("the Court will not order the Government to 'answer a set of detailed interrogatories in the guise of a bill of particulars'") (quoting United States v. Kenny, 462 F.2d 1205, 1212 (3d Cir. 1972)).

50.    In addition, when considering whether a bill of particulars is required, "it is proper to look to post-indictment discovery." United States v. Glecier, 923 F.2d 496, 502 (7th Cir. 1990). A bill of particulars is not required "when information necessary for a defendant's defense can be obtained through some other satisfactory form." Canino, 949 F.2d at 949 (quotation omitted).

51.    Here, the government, in this response, has provided a detailed summary of the nature of the evidence it intends to present at trial. Moreover, since October 2006, the government has made available for review extensive discovery to the defendants concerning the offenses charged against Defendants Rios and Lugo. That evidence includes all of the recorded conversations of transactions involving all of the related defendants, documentary evidence, and all available 18 U.S.C. § 3500 or Jencks material.

19

Given the discovery that has been and will continue to be made available to the

defendants, Defendant Lugo has not established that a bill of partculars is appropriate

or necessary. Accordingly, his motion should be denied.

Respectfully submitted,

RODGER A. HEATON
UNITED STATES ATTORNEY

BY:      s/Timothy A. Bass                           __
         TIMOTHY A. BASS, Bar No. MO 45344
         Assistant United States Attorney
         201 S. Vine St., Suite 226
         Urbana, IL 61802
         Phone:  217/373-5875
         Fax: 217/373-5891
         tim.bass@usdoj.gov

20

CERTIFICATE OF SERVICE

I hereby certify that on the 26th February 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Gal Pissetzky
Attorney for Defendant Gerardo Lugo

Carol Dison
Attorney for Defendant Jose C. Rios

s/Timothy A. Bass
TIMOTHY A. BASS
Assistant United States Attorney
201 S. Vine Street, Suite 226
Urbana, Illinois 61802
Phone:  217/373-5875
Fax: 217/373-5891
tim.bass@usdoj.gov