UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 07-20002 |
| GERARDO LUGO, | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT
LUGO'S MOTION FOR SANTIAGO PROFFER**

The United States of America, by its attorneys, Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Timothy A. Bass, Assistant United States Attorney, respectfully submits its response to Defendant Lugo's motion for a Santiago proffer. The government states as follows:

**PROCEDURAL HISTORY**

1.  On August 23, 2006, Defendant Lugo was charged in a criminal complaint (06-07222). The affidavit in support of the complaint provided a summary of two video and audio recorded drug transactions involving Defendant Lugo that occurred on June 9, 2005, and January 25, 2006, both of which are now charged in the superseding indictment against Defendants Lugo and Jose Rios as Counts 3 and 4. In describing the January 25, 2006, transaction, the affidavit states that "[an] informant and LUGO discuss[ed] the fact that [the informant] owes LUGO's source $32,350 for previous drug purchases." (Aff. at ¶14)

2. On August 23, 2006, Defendant Rios was charged in a criminal complaint with conspiracy to distribute cocaine (06-07223). The affidavit in support of the complaint provided a partial detailed summary of the evidence of the conspiracy.

3. Other defendants charged out of the same investigation in criminal complaints on August 22 and 23, 2006, include Christopher Morrissette (06-07219), Robert Odeneal (06-07216), Jason Pline (06-07217), Mario Macias (06-07220), and Heriberto Diaz (06-07218). The affidavits concerning these defendants described the drug transactions for which they were individually charged. In addition, an additional defendant, Jason Ward, was charged previously in this district in a criminal complaint and indictment and pleaded guilty in 2004. (04-07227, 04-20041)

4. On September 20, 2006, Defendant Rios was charged in an indictment with conspiracy to distribute 5 or more kilograms of cocaine. (06-20062) On that same date, Defendant Lugo was charged in an indictment with distribution of cocaine. (06-20057) In addition, related defendants Morrissette (06-20060), Macias (06-20059), Odeneal (06-20061), Pline (06-20063), and Diaz (06-20058) were also charged in separate indictments.

5. On January 4, 2007, Defendants Lugo and Rios were charged together in a superseding indictment. Count 1 of the superseding indictment charges that "from at least about 2003 or before and continuing until about August 2006," the defendants conspired to distribute and to possess with the intent to distribute 5 or more kilograms of cocaine. Count 1 further charges that "[a]s part of the conspiracy, the defendants

regularly distributed cocaine and caused others to distribute cocaine, often on a front or consignment basis, in the Kankakee, Illinois area."

6. The superseding indictment also charges one substantive count against Defendant Rios and two substantive counts against Defendant Lugo. Count 2 charges Defendant Rios with possession of a firearm in furtherance of a drug trafficking crime on or about February 18, 2004. Counts 3 and 4 charge Defendant Lugo with distribution of cocaine on or about June 9, 2005, and January 25, 2006.

7. In January and February 2007, related defendants Morrissette, Odeneal, Macias and Pline entered guilty pleas to their respective indictments. As part of their guilty pleas, Morrissette and Odeneal agreed to be held accountable for 5 or more kilograms of cocaine. (See Plea Agreements of Morrissette 06-20060, and Odeneal 06-20061)

8. On February 2, 2007, Defendant Lugo filed motions to dismiss the indictment and for a bill of particulars. On February 26, 2007, the government filed its response to those motions, in which it provided a summary of the evidence it intends to present at trial. In this Court's February 27, 2007, order denying the defendant's motions, this Court noted that the government had provided "a detailed summary of the evidence it intends to present at trial[.]" (Order at p.5) Thus, the government has previously provided to Defendant Lugo the proffer he seeks in his motion, which is set forth below.

3

## SUMMARY OF GOVERNMENT'S EVIDENCE

9. At trial, the government will present evidence to establish that, as the indictment alleges, from about 2003, and continuing until August 2006, Defendants Rios and Lugo knowingly and intentionally conspired with each other and others to distribute and possess with the intent to distribute a controlled substance, namely, 5 kilograms or more of a mixture or substance containing cocaine. The "others" referenced in the superseding indictment include Jason Ward, Christopher Morrissette, Robert Odeneal, Mario Macias, James Pline and others. In addition, the evidence will further establish that as part of the conspiracy, Defendants Rios and Lugo regularly distributed cocaine and caused others to distribute cocaine, often on a front or consignment basis, in the Kankakee, Illinois area. Finally, the evidence will further establish that, as part of the conspiracy, Defendants Lugo and Rios committed the substantive offenses charged against Rios in Count 2 and Lugo in Counts 3 and 4.

### Witness Testimony

10. To establish the charged conspiracy, the government intends to call Morrissette, Odeneal, Ward, Macias, Pline and others as witnesses at trial. The government expects that their testimony will establish that the charged conspiracy began in as early as 2003 and continued to August 2006. In addition, the government expects that these witnesses will testify that Defendants Rios and Lugo distributed cocaine together, sometimes on a front or consignment basis, and that Defendant Lugo distributed cocaine and collected money for Defendant Rios. Finally, the government

expects that Morrissette and Odeneal will testify that the 5 or more kilograms of cocaine they have already agreed to be responsible for at sentencing was part of the conspiracy with Defendants Rios and Lugo.

**Corroborative Evidence**

11.    In addition, the government's evidence at trial will include the following:

12.    On February 12, 2004, KAMEG agents utilized a confidential informant (CI) to conduct a controlled purchase of approximately 4.0 grams of cocaine from Jason Ward at his residence in Bourbonnais, Illinois. During the execution of a subsequent search warrant at Ward's residence, agents seized several items consistent with drug trafficking, including a a High Point, 9 mm semi-automatic pistol, a Cobray PM-11, 9 mm assault pistol, a Bauer Firearms Corp. .25 cal. Pistol, approximately 85 grams of marijuana, approximately 1.6 grams of cocaine, plastic sandwich bags, a digital scale, and $7,190 in cash.

13.    Ward was later indicted in this district with drug and firearm offenses. He pleaded guilty and agreed to cooperate with the government. As part of his cooperation, Ward discussed the nature of his drug trafficking with Defendant Rios and further advised that that the assault pistol found in his residence was provided by Defendant Rios.

14.    On February 17, 2004, agents confronted Defendant Rios about the firearm found at Ward's residence. Defendant Rios admitted to providing the firearm to Ward but denied knowing that he was a felon. He further consented to a search of his

residence in Kankakee. This statement was recorded. During a search of Defendant Rios's residence, agents seized a total of thirteen firearms, including nine semi-automatic handguns and three rifles.

15.     On January 20, 2005, a CI and a DEA undercover agent purchased approximately 130.2 grams of cocaine from Hereberto Diaz in Kankakee for $3,100. Prior to the transaction, agents observed a blue Chevrolet Tahoe at Diaz's residence. Shortly thereafter, the Tahoe left the residence and was driven by Defendant Rios. Following the transaction, agents observed Defendant Rios meet with Diaz at a pet store in Kankakee. As they were leaving the store, agents observed Diaz hand an unknown item to Defendant Rios.

16.     On June 9, 2005, agents met with a CI to conduct a controlled purchase of cocaine from Defendant Lugo. The CI and Defendant Lugo agreed to meet at a location in Kankakee to conduct a purchase of 4 1/2 ounces of cocaine for $2,500. The CI was searched with negative results and provided with $2,500 and a recording device. The CI later met with Defendant Lugo in Kankakee. While at the meet location, agents observed the CI get into Defendant Lugo's car (a black Pontiac Sun-fire) and then get out of the car a few minutes later. During the meeting, the CI purchased approximately 156 grams of cocaine from Defendant Lugo in exchange for the $2,500. This transaction was audio and video recorded. Later, in August 2006, agents seized the Pontiac Sun-Fire and found that it contained a modified hidden storage area, which was used to transport illegal drugs, in the area of the passenger air bag compartment.

17. On June 13, 2005, a CI was contacted by Rios and was directed to come to Rios's trailer at 1405 North Arthur Burch Dr., Lot V-12, in Bourbonnais. While at the trailer, the CI observed a list of people who owed money to Defendant Lugo for cocaine. The CS also observed several scales in the kitchen cabinets.

18. On August 4, 2005, agents conducted surveillance at Defendant Rios's trailer and observed a tan Land Rover, driven by a white male, and a black Hyundai with Iowa registration, driven by James Pline, arrive at the trailer and then depart approximately ten minutes later. Shortly thereafter, a traffic stop was conducted on Pline's car. During the stop, a drug dog alerted on the car. During a search of the car, agents seized 500 grams (1/2 kilogram of cocaine). Subsequent analysis on the packaging for the cocaine revealed Defendant Rios's fingerprint.

19. On September 26, 2005, a CI purchased approximately nine ounces of cocaine from Valentin Atilano in exchange for $5,400. Prior to the transaction, agents observed Atilano meet with Defendant Rios at Rios's trailer. Shortly therafter, Defendant Rios left the trailer, went to Wal-Mart, and then returned back to the trailer. Atilano then left the trailer and met with the CI to conduct the cocaine transaction. The cocaine was contained within a Wal-Mart bag.

20. Phone records obtained for phones known to be utilized by Defendant Rios and Atilano reflect that between June and December 2005, there were 847 contacts between Rios and Atilano. Total phone contacts between them exceed 1,000.

21. As part of the most probative evidence of the charged conspiracy, the

goverment will establish that, on January 25, 2006, a CI conducted a recorded telephone conversation with Defendant Rios. During the conversation, the CI and Defendant Rios discussed CI's $32,350 drug debt that was owed to Defendant Rios. The CI advised Rios that Lugo instructed the CI to call Rios. Defendant Rios instructed the CI to write down the amount of debt and provide it to Defendant Lugo.

22.    In addition, during the call, the CI also asked Defendant Rios about obtaining additional cocaine. The CI advised Defendant Rios that he had $3,500 to pay toward the debt but that he wanted to obtain more cocaine as a means of making additional money for payment. Defendant Rios advised that he would contact Defendant Lugo to arrange the delivery of cocaine.

23.    Later that same day, the CI contacted Defendant Lugo by phone and conducted an additional recorded conversation. During the call, the CI advised Defendant Lugo of his earlier conversation with Defendant Rios concerning the CI's debt. They also discussed arrangements to meet at the CI's residence to conduct a purchase of an additional 4 1/2 ounces of cocaine.

24.    Following the call with Defendant Lugo, agents set up the CI's residence with audio and video recording devices. They also searched the CI and provided him with $3,500. In addition, agents instructed the CI to write down the amount of the debt owed to Defendant Rios.

25.    Approximately one hour later, agents observed Defendant Lugo arrive at and enter the residence. While inside the residence, Defendant Lugo provided the CI

with 133.4 grams of cocaine in exchange for $3,500. This entire transaction was audio and video recorded. The video recording reflects that Defendant Lugo entered the residence, placed the cocaine on the kitchen table, and then picked up from the table the money and the paper on which was the written amount of the debt owed to Defendant Rios.

26. On March 13, 2006, Chicago police officers executed a state search warrant at a known apartment of Defendant Rios in Cicero, Illinois. Defendant Rios was present at the time of the search. During the search, officers seized 192 grams of cocaine, a kilogram press box, and $21,480 in cash.

27. On August 3, 2006, Defendant Rios was the subject of a traffic stop by the Illinois State Police that occurred in Berwyn (Cook County), Illinois. During the stop, Defendant Rios consented to a search of his residence in Berwyn. During a search of the residence, officers seized $27,000 in cash.

28. In December 2006, agents observed a second black Pontiac Sun-Fire at a storage unit for Defendant Rios in Bourbannais. The car was registered to Defendant Lugo with a known address for Defendant Rios. Agents photographed a modified hidden storage area in the car, which was located in the passenger air bag compartment, the same location of the hidden storage area previously found in the other black Pontiac Sun-Fire used by Defendant Lugo.

29. A review of phone records obtained to date for Defendants Rios and Lugo reflects more than **500** phone calls between them. In addition, phone records reflect

more than **180** calls between Defendant Rios and Morrissette and more than **50** calls between Morrissette and Defendant Lugo.

### Expert Testimony

30.     The government also intends to introduce summary/expert testimony from DEA Special Agent Tony Grootens or DEA Special Agent Glenn Haas, both of whom work out of the Springfield, Illinois DEA office. One of these agents will testify to matters concerning common characteristics of persons engaged in drug trafficking. Specifically, the agent will testify that persons engaged in drug trafficking often possess large amounts of cash, engage in cash transactions, distribute cocaine on a "front" or consignment basis, and utilize vehicles to transport cocaine that have been modified to contain hidden compartments. In addition, one of these agents will also testify to common distribution amounts and prices for cocaine. Finally, one of the agents will testify that one kilogram of cocaine is typically sold for $20,000 or more in Kankakee, Illinois. The agent will testify to these matters based on his extensive experience in drug trafficking investigations.

### ARGUMENT

31.     "Under Federal Rule of Evidence 801(d)(2)(E), a statement is not hearsay if it is offered against a party, is a statement of a coconspirator of the party and was made in furtherance of the conspiracy. In order to comply with this rule, the government must demonstrate by a preponderance of the evidence that the conspiracy existed, that the defendant and the declarant were members of the conspiracy, and that the

statements sought to be admitted were made in furtherance of the conspiracy." United States v. Williams, 44 F.3d 614, 617 (7th Cir. 1995); see United States v. Schumpert, 958 F.2d 770, 773 (7th Cir. 1992); United States v. Santiago, 582 F.2d 1128, 1134 (7th Cir. 1978). In making this determination, the court may "examine the hearsay statements sought to be admitted." Bourjaily v. United States, 483 U.S. 171, 181 (1987). Although a party against whom a co-conspirator statement is admitted must be a member of the conspiracy, the fact that such party was not a member of the conspiracy at the time the statement is made "is irrelevant." United States v. Sophie, 900 F.2d 1064, 1074 (7th Cir. 1990). "Under Rule 801(d)(2)(E), a conspirator's statement is admissible against conspirators who join the conspiracy after the statement is made." Id. Moreover, "statements that further the objectives of a conspiracy can take many forms, including statements made to recruit potential coconspirators, . . . statements seeking to control damage to an ongoing conspiracy, . . . statements made to keep coconspirators advised as to the progress of the conspiracy, . . . and statements made in an attempt to conceal the criminal objectives of the conspiracy," but do not include idle chatter or casual conversation. Garlington v. O'Leary, 879 F.2d 277, 283 (7th Cir. 1989).

32.   In this case, the government does not anticipate that it will seek to admit a significant amount of co-conspirator statements. Nonetheless, the government anticipates that it will seek to admit the following types of statements made by the members of the conspiracy that were made in furtherance of the conspiracy:

- Any statements concerning the formation and recruitment of members of the

conspiracy;

- Any statements concerning attempts to obtain and distribute cocaine;

- Any statements concerning attempts to collect money owed to one or both defendants or other co-conspirators;

- Any statements made to evade law enforcement and to conceal the existence of the conspiracy.

Although one or both of the defendants may not have been a member of the conspiracy at the time one or more of such statements were made, that fact "is irrelevant" provided that the government establishes that each defendant "join[ed] the conspiracy after the statement [wa]s made." Sophie, 900 F.2d at 1074. "Under Rule 801(d)(2)(E), a conspirator's statement is admissible against conspirators who join the conspiracy after the statement is made." Id.

33.   All of such statements by either of the defendants will also qualify as admissions of a party opponent under Rule 801(d)(2)(A) against the particular

defendant who made the statement.

                    Respectfully submitted,

                    RODGER A. HEATON
                    UNITED STATES ATTORNEY

BY:    s/Timothy A. Bass
        TIMOTHY A. BASS, Bar No. MO 45344
        Assistant United States Attorney
        201 S. Vine St., Suite 226
        Urbana, IL 61802
        Phone: 217/373-5875
        Fax: 217/373-5891
        tim.bass@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 27th of April 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Gal Pissetzky
Attorney for Defendant Gerardo Lugo

Carol Dison
Attorney for Defendant Jose C. Rios

                                                          s/Timothy A. Bass
TIMOTHY A. BASS
Assistant United States Attorney
201 S. Vine Street, Suite 226
Urbana, Illinois 61802
Phone: 217/373-5875
Fax: 217/373-5891
tim.bass@usdoj.gov