UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 CR 20002 |
| vs. ) | |
| ) | |
| ) | |
| GERARDO LUGO, ) | |
| ) | |
| Defendant. ) | |

**SENTENCING MEMORANDUM**

Defendant Gerardo Lugo submits the following Sentencing Memorandum pursuant to Rule 32 of the Federal Rules Criminal Procedure, and 18 U.S.C. §3553, as well as the Sixth Amendment to the Constitution of the United States and the Supreme Court's opinions in <u>United States v. Booker</u>, 543 U.S.220, 125 S.Ct. 738 (2005), and <u>United States v. Rita</u>, 551 U.S. __, 127 S.Ct. 2456 (2007).

**Legal Principles**

In <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738 (2005), the United States Supreme Court found that the United States Sentencing Guidelines violate the Sixth Amendment by requiring district courts to enhance sentences based on factors not proven to a jury beyond a reasonable doubt. To remedy the Sixth Amendment violation, the Supreme Court excised certain statutory provisions, thereby rendering the guidelines merely advisory.

**A. Section 3553(A) Sets The Appropriate Sentencing Standard, And The Guidelines Are But One Factor To Be Considered.**

After Booker, the advisory guideline range is not but one factor to consider in imposing an individual reasonable sentence. Pursuant to *18 U.S.C. §3553(a)*, the court is required to "impose a sentence sufficient, but not greater than necessary," to satisfy the purposed of sentencing. (Emphasis added.) Those purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and,
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*18 U.S.C. §3553(a)(2)*.

Aside from the purposes of sentencing and the advisory guideline range, courts are required to also consider: (1) the nature and circumstances of the offense and the characteristics and history of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and, (4) the need to provide restitution to the victims of the offense. *18 U.S.C. §3553(a). See also, United States v. Cunningham, 429 F.3d 673, 676 (7th Cir. 2005)* ("[T]he sentencing judge may not rest on the guidelines alone, but must, if asked by either party, consider whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors. . . . He cannot treat all sentences that would fall within the guidelines sentencing range as reasonable per se.").

This Circuit has concluded that district courts must consider the factors set forth in §3553(a) at sentencing, in conjunction with the advisory guidelines. *United States v. Dean, 414*

F.3d 725, 729 (7th Cir. 2005); United States v. Robinson, 435 F.3d 699, 701 (7th Cir. 2006). As the Dean Court explained, while the guidelines are no longer mandatory, the factors enumerated in §3553(a) are. In light of these decisions, district courts may no longer consider the sentencing guidelines as the end of the inquiry. The *§3553(a)* factors are mandatory and there must be sufficient indication in the record that *§3553* factors relevant to the inquiry were appropriately considered. *See, e.g.* United States v. Vaughn, 433 F.3d 917, 924 (7th Cir. 2006). And, the need for the district court to explain its consideration of the *3553(a)* facts, when choosing to impose a guideline sentence, is proportional to the arguments made by the defendant that the sentence should be outside the guidelines. United States v. Spano, 447 F.3d 517, 519 (7th Cir. 2006).

### B.  The Guidelines Are Granted No Presumption Of Reasonableness In The District Court.

Moreover, as the United States Supreme Court recently concluded, district courts are not permitted to presume that a sentence within the guidelines range is the correct sentence. United States v. Rita, 551 U.S. __, 127 S.Ct. 2456, 2465 (2007). Rather, a district court must consider the applicability of the guidelines in conjunction with any other evidence and arguments supporting a sentence outside the range. *Id.* The *Rita* Court explained:

> We repeat that the presumption before us is an appellate court presumption. Given our explanation in Booker that appellate "reasonableness" review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review. The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. He may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, USSG *§5K2.0,* perhaps because the Guidelines sentence itself fails properly to reflect *§3553(a)* consideration, or perhaps because the case warrants a different

3

>    sentence regardless. Thus, the sentencing court subjects the defendant's sentence to
>    the thorough adversarial testing contemplated by federal sentencing procedure. In
>    determining the merits of these arguments, the sentencing court does not enjoy the
>    benefit of a legal presumption that the Guidelines sentence should apply.

*Rita,* 127 S.Ct. 2456, 2465 (citations omitted).

Determining whether a guideline sentence is reasonable, or not, therefore, is not the appropriate analysis in the district court. Rather, *§3553(a)* is, as the Seventh Circuit has held, " a directive to the sentencing court." United States v. Cuningham, 429 F.3d 673, 676 (7th Cir. 2005). "Reasonableness" is simply the standard of review that operates on appeal. Id. If, for example, a district court decides to impose a sentence within the properly calculated guideline range, then the Seventh Circuit will grant the sentence a rebuttable presumption of reasonableness on appeal. See, United States v. Mykytuik, 415 F.3d 606, 608 (7th Cir.2005). But there is no presumption of "unreasonableness" for a sentence outside of the guidelines. United States v. Jordan, 435 F.3d 693, 698 (7th Cir.2005)

That the Seventh Circuit will not consider a below guideline sentence presumptively unreasonable was made clear in United State v. Ngatia, 477 F.3d 496 (7th Cir.2007). In *Ngatia*, the Seventh Circuit upheld a sentence more than 100 months below the guidelines range based on findings that the defendant had made efforts at post offense rehabilitation while incarcerated, and based on evidence of good character. Id. The district court concluded that a below guidelines sentence was warranted because the defendant has made attempts to rehabilitate herself in prison after her arrest, and the statements of the defendant and her family and friends reflected her good character. The district court also noted that the defendant's incarceration has not incapacitated the smuggling operation, as it continued after she was arrested. *Id., at 502*.

In affirming the sentence 100 months below the guidelines range, and concluding that the

district court's finding were sufficient to support such a sentence, the Seventh Circuit explained that where a district court sees fit to go outside of the guidelines, it must justify its decision in order to provide the appellate court with a basis upon which to review the reasonableness of the sentence. *Id., at 502.* The Seventh Circuit held, however, that "the district court's choice of sentence, whether inside or outside the guidelines range, is discretionary and subject therefore to only light appellate review." *Id., at 501-02,* citing, *United States v. Demaree, 459 F.3d 791, 795 (7th Cir.2006) (Emphasis added).*

      **C.    Guideline Prohibitions Against Considering Certain Matters Are No Longer Applicable.**

In addition to transforming the sentencing guidelines from mandatory to advisory, *Booker* also removed restrictions which prohibited or discouraged district courts from considering certain facts. For example, Guideline *§5H1.6* previously discouraged consideration of certain offender characteristics such as family ties and responsibilities, and ties to the community as a basis for a downward departure. See, USSG *§5H1.6*. After *Booker*, such restrictions no longer apply so long as the consideration of such a factor is tied to *§3553(a). See, 18 U.S.C. §3661* (indicating that "[n]o limitation shall be placed on the information concerning the background character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *United States v. Johnson, 427 F.3d 423, 426 (7th Cir.2005)* ("After *Booker*, what is at stake is the reasonableness of the sentence, not the correctness of the 'departures' as measured against pre-Booker decision, which restricted the discretion of sentencing courts to depart from guidelines that were then

mandatory"). Likewise, district courts may give "more weight that the guidelines themselves would have allowed" to positive aspects of character such as community contributions, and the like. *United States v. Rose*, 435 F.3d 735, 736 (7th Cir.2006)

### D. The Sentence Must Not Be Greater Than Necessary To Satisfy The Purpose Of Sentencing.

Lastly, and perhaps most important, special attention needs to be paid to the provision of *§3553(a)* which requires district courts to "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2)." *See,* 18 U.S.C. §3553(a); *United States V. Ranum*, 353 F.Supp.2d 984, 986 (E.D. Wis.2005). As one district court has explained:

> The statute directs the court, after considering these factors, to impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in sub-section (1)(2). Id. This is the so-called parsimony provision, which requires district courts to impose the minimum term required to satisfy the purposes of sentencing-just punishment, deterrence, protection of the public and rehabilitation of the defendant. *See, e.g., United States v. Cull,* 446 F.Supp.2d 961, 963 (E.D.Wis.2006); *see also, United States v. Ferguson*, 456 F.3d 660, 667 (6th Cir.2006) (stating that the parsimony provision serves as the guidepost for sentencing decisions post-Booker).

*United States v. Santoya*, 493 F.Supp.2d 1075, 1077 (E.D.Wis.2007) (Adelman,J.).

Other commentators have likewise noted that the "parsimony provision" is not just another 'factor' to be considered along with the other factors set forth in *§3553(a)* – it sets an independent limit on the sentence a court may impose." *David L. McColgin and Brett G. Sweitzer, Grid & Bear It, 29 Champion 50 (2005), See also, Richard S. Frase, Punishment Purposes, 58 Stan L.Rev. 67, 83 (2005)* ("the structure of section 3553(a), listing the parsimony provision first, suggests that it "sets overall limits on the crime-control and other purposes which follow").

## II. The District Court Should Find the Substance is Cocaine and Impose a Sentence within the Guidelines

### A. The Nature And Circumstances Of the Offense

Alex Serrano pled guilty to one count of distribution of a controlled substance. Mr. Serrano does recognize he did violate the law by distributing controlled substances. Mr. Serrano's remorse for his participation in the offense is manifest, and he will live with the associated guilt and shame for the rest of his life. The magnitude of his lapse in judgment weighs on him more than any punishment this Court could ever impose.

### B. Characteristics And History of Gerardo Lugo

#### i. Family and Personal History

Mr. Lugo came into the United States from Mexico on his own when he was 15 years old. PSR p. 16. He returned to Mexico about a month later. Mr. Lugo has a very close relationship with his family. When his father past away about 11 hears ago, Mr. Lugo was very depressed. His mother past away only a couple of years later. Wanting to be close to his sisters, Mr. Lugo entered to United States early in 2003, and moved in with his sister at the age of 21. Being undocumented in the Unites States, he attempted to find a legitimate job. He had steady work as a line cook in a restaurant and as a window installer.

Mr. Lugo developed a close relationship with his brother in law, Jose Rios, due to their mutual interest in motorcycles and cars. However, Mr. Rios took advantage of Mr. Lugo. Being young and impressionable, Mr. Rios showed Mr. Lugo how to make fast cash. Without positive guidance, Mr. Lugo unfortunately fell in the trap and sold some drugs he received from Mr. Rios. Mr. Lugo did not sell drugs for a living and did not become a major drug dealer. He did sell

drugs to supplement his income, and he knows it was absolutely wrong.

### ii. Mr. Lugo Deportable Status

Mr. Lugo is an illegal alien. Once he serves his sentence he will be deported back to Mexico, and will not be allowed to return into the United States. He will never be able to be close to his family again. Moreover, because of his immigration status, Mr. Lugo will not be eligible to serve his sentence in a minimum security facility, to be released to a half-way house, to benefit from certain rehabilitative programs offered in prison, or to receive good time credit. Whatever sentence this Court imposes on Mr. Lugo will certainly be more sever than a similar sentence imposed on a United States citizen. This Court should consider Mr. Lugo's deportable status and sentence him accordingly. *See* USA v. Farouil, 124 F.3d 838 (7th Circ. 1997); USA v. Gonzalez-Portillo, 121 F.3d 1122 (7th Circ. 1997).

### III. The Parsimony Provision

Next, § 3553(a) requires courts to "impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a) (West 2003) (emphasis added); *see also Ranum*, 353 F. Supp. 2d at 986 & n.1. This has come to be known as "the parsimony provision." *See United States v. Jimenez-Beltre*, 440 F.3d 514, 525 & n.8 (1st Cir. 2006).

Commentators note that this provision, which was originally part of the House sentencing reform bill and was later added to the Senate resolution and adopted in committee, "is not just another 'factor' to be considered along with others set forth in Section 3553(a)—it sets an independent limit on the sentence a court may impose." David L. Mccolgin & Brett G. Sweitzer, *Grid & Bear It*, 29 Champion 50, 50 (2005); *see also United States v. Foreman*, 436 F.3d at 644

n. 1 (6th Cir.2006) ("[A] district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2).") (quoting 18 U.S.C. § 3553(a)); Richard S. Frase, *Punishment Purposes*, 58 Stan. L. Rev. 67, 83 (2005) (stating that "the structure of section 3553(a)," which lists the parsimony principle first, suggests that this principle "set[s] overall limits on the crime-control and other purposes which follow"). The parsimony provision requires courts to impose the *minimum* necessary to accomplish the purposes enumerated in paragraph (2). Paragraph (2) lists those purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2) (West 2005).

These purposes, of course, substantially correspond to the four traditional goals of criminal punishment: retribution, deterrence, incapacitation, and rehabilitation.

### A. Retribution

As to purpose (A), Mr. Lugo regrets making the dreadful decisions he made and will never repeat his bad choices. Mr. Lugo is bound to receive a very sever sentence that will undoubtedly promote respect for the law.

### B. Deterrence

As to purpose (B), deterrence is generally divided into two subcategories: (1) specific and (2) general. Specific deterrence, of course, is to deter Mr. Lugo from ever dealing, possessing or being associated with illegal drugs after his release from prison.

As to specific deterrence, the guideline sentence is certainly long enough to deter Mr.

Lugo from committing any future crimes. Moreover, since he will be deported and will not be able to return to the United States and be with his family, any sentence will serve as deterrence.

As to general deterrence, a message certainly needs to be sent to the community at large that drug dealing will not be tolerated and will be significantly punished with jail time. However, it is the *certainty* of punishment, not its severity that deters crime. *See United States v. Kloda,* 133 F. Supp. 2d 345, 347-48 (S.D.N.Y. 2001) (Hellerstein, J.) (in context of business crimes); *United States v. Scroggins*, 880 F.2d 1204, 1206 (11th Cir. 1989) (noting Revolutionary War's introduction of concept); *see also* Anthony N. Doob & Cheryl Marie Webster, *Sentence Severity and Crime: Accepting the Null Hypothesis*, 30 Crime & Just. 143 (Univ. of Chicago 2003) (arguing that severity of punishment does not deter crime); Jeffrey Grogger, *Certainty vs. Severity of Punishment*, 29 Econ. Inquiry 297, 308 (1991) (concluding increased certainty of punishment generates significant deterrent effects while increased severity produces insignificant results); William N. Trumbull, *Estimations of the Economic Model of Crime Using Aggregate and Individual Level Data*, 56 S. Econ. J. 423, 427-37 (1989) (analyzing data to conclude certainty of punishment has greater deterrent effect than severity); Ann Dryden Witte, *Estimating the Economic Model of Crime with Individual Data*, 94 Q.J. Econ. 57, 81-83 (1980) (maintaining certainty of punishment produces greater deterrent effect than severity of punishment).

Mr. Lugo's conviction in this case will result in certain punishment. No doubt exists that any sentence will serve as a substantial general deterrent to the public.

### C. Incapacitation

As to (C), which amounts to incapacitation, Mr. Lugo has already been incapacitated from committing further alleged crimes during his period of pretrial detention, and he will undoubtedly be incapacitated for some time to come. Moreover, as state above, Mr. Lugo

will not be returning into our community. Thus, the question is how long he really needs to be incapacitated in order to protect the public. A minimal sentence will accomplish this goal.

Recidivism drops substantially with age. *United States v. Nellum,* 2:04-CR-30, 2005 WL 300073, *3 (N.D. Ind. Feb. 3, 2005) (Simon, J.); *see also Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005); *United States v. Carmona-Rodriguez*, 2005 WL 840464, *4 (S.D.N.Y. April 11, 2005) (Sweet, J.) (30-month sentence for 55-year-old defendant where guideline range was 46-57 months); *United States v. Hernandez*, 2005 WL 1242344, *5 (S.D.N.Y. May 24, 2005) (Sweet, J.) (50-month sentence for 49-year-old defendant where guideline range was 70-87 months).

According to a United States Sentencing Commission Report released in May, 2004, "Recidivism rates decline consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates." *Id.* (quoting U.S.S.C., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 12, http://www.ussc.gov/publicat/Recidivism-General.pdf). As the report states, "Among all offenders under age 21, the recidivism rate is 35.5%, while offenders over age 50 have a recidivism rate of 9.5%." *Id.* (quoting same).

The positive correlation between age and recidivism is impossible to deny. *Id.* Under the guidelines, the age of the offender is not ordinarily relevant in determining the sentence. *Id.* (citing § 5H1.1). But under § 3553(a)(2)(C), age of the offender is plainly relevant to the issue of "protect[ing] the public from further crimes of the defendant." *Id.* Thus, with importation looming, Mr. Lugo does not need to be incapacitated for more than at the most ten years in order to keep him from committing other serious crimes.

11

Moreover, according to the United States Sentencing Commission Report past employment and education correlate directly with recidivism. *Id.* (quoting U.S.S.C., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 12, http://www.ussc.gov/publicat/Recidivism-General.pdf). Mr. Lugo has been steadily employed before his incarceration.

Finally, according to the United States Sentencing Commission Report drug traffickers have the lowest rate of recidivism, especially when the criminal history of the offender in I or II. *Id.* (quoting U.S.S.C., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 13, http://www.ussc.gov/publicat/Recidivism-General.pdf). Mr. Lugo's criminal history is I, and he is determined never to commit any future crimes.

### D. Rehabilitation

Although Mr. Lugo committed this offense, he can still be rehabilitated with appropriate education and treatment, the subject of factor (D) in 18 U.S.C. § 3553(a)(2). As the parsimony provision commands, this Court should impose the *minimum* sentence necessary to accomplish the rehabilitative and other purposes of criminal punishment.

### III. Conclusion

For all of the reasons set forth above, counsel submits that a sentence below the guideline range of 151 months is appropriate. A lengthier term of incarceration would be merely punitive and serve no legitimate goal.

Respectfully submitted,

/s/ Gal Pissetzky
GAL PISSETZKY
Attorney for Alexander Lugo

GAL PISSETZKY
Pissetzky & Berliner, P.C.
The Monadnock Building
53 W. Jackson Blvd.
Suite 1403
Chicago, Illinois 60604
(312) 566-9900

## CERTIFICATE OF SERVICE

I hereby certify that foregoing Defendant Lugo's Sentencing Memorandum was served on January 25, 2008, in accordance with Fed.R.Crim.P.49, Fed,.R.Civ.P.5, LR 5.5, and the General Order of Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Gal Pissetzky
GAL PISSETZKY
Pissetzky & Berliner, P.C.

13

                    The Monadnock Building
                    53 W. Jackson Blvd.
                    Suite 1403
                    Chicago, Illinois 60604